MOTION UNDER 28 U.S.C. § 2255 TO VACATE CONVICTION

United States District Court
Northeastern District of Illinois
Eastern Division

CURTIS SMITH
Jerome Combs Detention Center

Case No.: 06 CR 0441
Prisoner No.: 228499

08CV2265
JUDGE HIBBLER
MAG. JUDGE VALDEZ

UNITED STATES OF AMERICA    v.   CURTIS SMITH
                                  Movant

**FILED**
APR 21 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MOTION TO VACATE CONVICTION

1.) (A) JUDGE WILLIAM HIBBLER - COURT ROOM — NORTHEASTERN DISTRICT OF ILLINOIS EASTERN DIVISION — United States Court House - 219 South Dearborn Street, Chicago, Illinois 60604

(B) Case number: 06 CR 0441

2.) (A) Date of the Conviction: The 11th Day of April, 2008. A.D
(b) Date of Sentencing: July 24, 2008.

3) Length of Sentence: Unknown at This Time, and Date of April 14, 2008

4) Nature of Crime: Possession of a Controlled substance one count., and one count of unlawful possession of a weapon by a Felon

5) (A) What was your plea? (1.) Not Guilty ✓

6.) If you went to Trial, what kind of Trial did you have? Jury ✓

7.) Did you testify at Trial? ~~Yes~~ ✓ YES

8.) Did you appeal from the Judgment of Conviction? ✓ NO - Because I Have Not Found Appeal Form.

9.) If you did appeal, answer the Following: N-A

10.) YES

11.) (A)(1) Name of Court: FEDERAL COURT, BEFORE ~~THE~~ JUDGE WILLIAM HIBBLER, UNITED STATE DISTRICT COURT- NORTHEASTERN DISTRICT of Illinois
(2) Case Number: 06 CR 0441
(3) Date of Filing: On The 5th Day of April. I FILE A Pretrial Motion to Dismiss Charge. I submitted motion by PROSE, REFER, and I PROSE REFER I Mailed out a motion for a Judgment of Acquittal, on the 11th Day of April, 2008, A.D.

(4) Nature of the Proceeding: Judge William Hibbler Denied the motion to dismiss Charge. I have not Received a Response Back on The Motion for a Judgment of Acquittal. I Do not Know if The Motion was Filed Yet.

(1 of 6)

11.) (5) Grounds Raised: on Motion To Dismiss Charge upon The Following Grounds:
(A) ①. The PROSECUTION of The Offense is Barred by section 725 ILCS 5/114-(1)(A)(2)
② The EFFECT of FORMER PROSECUTION, section 720 ILCS 5/3(4)(A) A PROSECUTION is Barred If The defendant was Formerly Prosecuted For The same offense, Based upon The same Facts; Nemo debet bis vexari pro una et eadem causa. I FILED AFFIDAVIT IN Support of Motion To Dismiss Charge.

③ 725 ILCS 5/114-(1)(A)(9) The INDICTMENT is Base solely upon The Testimony of an incompetent witness, who is a City of Chicago Sixth District Police Officer MICHAEL O'DONNELL, Who Lied Before The Special Grand Jury Number #2199 of Cook County, on The 22nd Day of February, A.D. 2005. Arr. Date 03-15-05 case number 05 CR 5199. After OFFICER O'Donnell was duly sworn To Testify, he Changed his Police Arrest Report Statement In The Grand Jury Transcript of Testimony Taken in The Above ENTITLED MATTER, PRESENTED By: James Tomaska.

Then POLICE OFFICER O'Donnell, Lied and Changed his statement again That is in his Chicago Police Arrest Report Number HL-153 314 and O'Donnell Statement Did not MIRROR his Testimony Taken Before The special Grand Jury number #2199. MR O'DONNELL, After he was duly sworn To Testify on The Stand Before The Honorable Judge William Hibbler and The Jury, OFFICER O'Donnell Lied and his statement Did NOT MIRROR Grand Jury number 2199 Transcript of Testimony, NOR his City of Chicago POLICE ARREST REPORT NUMBER HL-153-314.

MOREOVER, There was NOT Reasonable Suspicion of criminal activity. Wherefore, There was not ADQUATE JUSTIFICATION FOR The ILLEGAL STOP. The means of investigation Employed was not Reasonably Related For Suspicion.

Wherefore, Premises considered City of Chicago Police Officer O'Donnell and OFFICER Walker, improper search, and Lack of diligence Created into an unreasonable search and seizure, Afterwards The unconstitution detention and arrest of Defendant Curtis Smith Violated The Exclusionary RULE. OFFICER Michael O'Donnell and Corey Walker had No Probable cause For The Illegally search and ~~search~~ seizure of Curtis Smith person and his property.
Chicago Police Officer O'Donnell and Officer Corey Walker has Violated Defendant The Fourth, The Fifth and Eight, and Fifth and Fourteenth Amendment Rights To The Federal Constitution

11.)
(6) YES - I SUBMITTED AN AFFIDAVIT IN SUPPORT of Motion To DISMISS Charge.

(7) Judge William Hibbler DENIED The Motion To Dismiss Charge
(8) Date of Result: The 5th Day of April, 2008 A.D.

( 2 of 5 )

II.) (B)(1) United States District Court, Northeastern District of Illinois, EASTERN DIVISION.

(2) Case Number: 06 CR 0441

(3) Date of Filing: I mail out the Motion for A Judgment of Acquittal on the 15th day of April, 2008. A.D - I do not know if it has been Filed yet.

(4) Motion for A Judgment of Acquittal.

(5) Grounds raised: The Indictment is base solely upon the testimony of
(1) an incompetent witness who is a City of Chicago Sixth District Police Officer Michael O'Donnell ① he lied before the special Grand Jury number 2199 of Cook Count on the 22nd day of February, 2005, A.D. ② Mr. O'Donnell stated a difference lied before Judge William Hibbler and Jury ③ Police Officer O'Donnell, Lied and changed his statement again on his City of Chicago Police Arrest Report number HL-153314. NONE OF MR. MICHAEL O'DONNELL STATEMENT MIRRORS his Transcript of Testimony taken before the special Grand Jury number #2199.

(2) The Two witness duly SWORN to testify on the stand before JUDGE WILLIAM HIBBLER and the Jury, The City of Chicago Sixth District Police Officer Michael O'Donnell and Police Officer Walker Coroy statement and testimony on what happen on January 30, 2008 100% percent difference, Both Officer Coroy Walker and Officer Michael O'Donnell Lied and Told Two completely difference account of what accured that night the two officer Lied under oath about the facts.

(3) There was not Reasonable suspicion of criminal activity and there was not adquate justification for the unconstitutional stop, detention and arrest of defendant Curtis Smith, In which Officer O'Donnell and Officer Walker Violtion of the Constitution and the Exclusionary Rule. The was not probable cause for the ILLEGAL search and seizure of Curtis Smith person and his property. Officer Coroy Walker and Officer Michael O'Donnell Violated Defendant's the Fourth Amendment Rights, The Fifth the Eight, The Fifth and Fourteenth Amendment Rights to the Federal Constitution.

(b)(5)( The City of Chicago Police Officer Lieutenant who was in charge of weapon evidence had destroyed the 33 years old, Very important Deem Exculpatory Evidencel Fact, water damage, Rusted out Trigger Derringer Pistol. That 2 shot Rusted Beaten up Rotted out Pistol could have Attest the Fact to the Judge Hibbler and the Jury that water damage Rusted out Pistol was useless. Thus, the Pistol could not be used for Protection or self defense. Officer Walker Removed the wrapped up Towel from Steve Sanford Tool work Bag In which the work Bag was located in the Rear Partition off from the front seat section of the Van with a 1/4" inch steel metal Painted Black, thick

( 3 of 6 )

(11.)

(B)(5) The Assistant United States Attorney committed prosecutional misconduct. The Prosecution did not produce the original rusted out trigger, beat up Derringer pistol, but, the Prosecution produce a brand new shiny Derringer pistol exhibit. The prosecutor passed the new pistol around to the Jury. Then the Prosecution statement alleged that Defendant Curtis Smith had a gun just like this gun. In which the Prosecution created tainted and corrupt evidence, and prejudiced the Jurors against Defendant with that brand new shiny radiant, bright danegerous looking gun.

The Defendant Curtis Smith was prejudiced against when Judge William Hibbler allowed the United States Department of Justice, Assistant United States Attorney to use as an exhibit, then enter into evidence that brand new shiny weapon. I believe a conspiracy has been committed against Defendant Curtis Smith. Because, Instead of presenting the original 33 years old busted up, beat up, rusted out trigger pistol.

My Attorney Michael Finn could, should have objected to the use of a brand new shiny radiant, bright dangerously look Derringer pistol.

Judge William Hibbler prejudiced the Jurors against Defendant Curtis Smith again when the Judge Hibbler allowed the Prosecution to expanded and enlarge the area and space therefore Defendant Curtis Smith can be interpretated as having possession of pistol and narcotics. My Attorney Michael Finn did not object to the expanded area of Defendant having possession of said two items.

I wanted to get on the stand to tell the Jurors, Judge Hibbler, The People and anyone who wanted to here the truth and facts how the Police framed, and set me up because of my 1995 case.

When I, Defendant Curtis Smith took the stand I stated "The Facts of what Officer Michael O'Donnell and Officer Coroy Walker had done to me when Officer O'Donnell took my money $559.00 Defendant informed Jurors that he informed Mr. O'Donnell, he got a two year old baby at home. She need milk, pampers; my rent is due on the first! Please give me my money back! I work for a living! Why have you arresting me? For what probable cause do you have to arrest me, officer? I have not done nothing wrong!

Officer O'Donnell stated, "When I seen Vivian Jones a known prostitute get out of the van, and you, wiping steam off the window and she, Felicia Jackson sitting on his lap -(Steve Sanford). When I ran your license plate Curtis you are a sex offender! Now Curtis you know I had to come check you out. Curtis, you know you broke the law when you had sex with a prostitutes on the street in this van, and you are a sex offender."

Now all the Jurors was saying OOL-AH-O-OOL. Then my Attorney ask me approximately one more question then he rested.

I wanted my Attorney to keep questioning about what happen that night, But Instead my Attorney stop questioning me & rested.

(11.)

(B)(5) Now, Assistant United States Attorney Began Questing Me The Defendant Curtis Smith About The 1995 Sex Abuse Case Because I open The Door Because I was Testifing about what Officer O'Donnell had Robbed Me Then he Arrested me without Probable Cause. The Prosecution Continue To Taint, corrupt and Prejudiced Jurors against The Defendant Curtis Smith when Prosecutor continue To Inform The Jurors about The sex Abuse ~~Case~~ case. And The Prosecution Continue To Persent The Brand NEW Pistol To The Jurors stating This is The gun The Gun Police officer O'Donnell Took off Defendant Curtis Smith From behind The seat wrapped in a white Towel. The Assistant United States Attorney Relentless Informing Jury on His Inclination, Therefore, Biasously, prejudiced Jurors against Defendant Curtis Smith. Chicago Police Department Destroyed 2500 Chevy Cargo Van, and Gun That would have Attest The Defendant Facts, Statement There was Not A Drug Deal going on. Defendant Attorney Mr. Finn did not object one Time on That Line of Questing and get back on The Track of what happen on Januay 30, 2005.

① The Judge William Hibbler abused his discretion by allowing The Prosecution To Enlarge, Thus Expanded The Interpretation of what is Concidered possession upon a Person Body or in immediate Reach of said Person.

② Defendant Curtis Smith Attorney Michael Finn is guilty of ineffactive Assistance of counsel for Failure, To Object To Issue That injuried The Defendant Curtis Smith. Counselor Failure To Produce unto The Jury Photocopies of what officer O'Donnell statements Before The special Grand Jury number #2199, and what Officer O'Donnell statements written in his City of Chicago Police Arrest Report HL-153 314 There fore The Jurors in The Light could have seen That Officer O'Donnell had Changed His Statement again and was Lying To Them.

(12) GROUND ONE: There was NOT A Reasonable suspicion That criminal Activity

(A) is being undertaken. ① When officer O'Donnell displayed his weapon ② Officer used a Harsh, accusatorial Tone of voice; ③ Then Officer O'Donnell ordered ME (Curtis Smith) To Turn off your Engine! ④ Put your hand on The Dash Board! Don't move! ⑤ Then Officer O'Donnell Blocked Curtis Smith path with a police Vehicle, Then Officer O'Donnell Ran in a 45 degree Angle in Front of my Van To The driver side door, open The Door, Then he Physical grabbed coat and shirt collar For behind my Neck and Forcefully Pulled Defendant Curtis Smith out of The Van, Then, Officer O'Donnell Put my hands Behind ~~Defendant~~ my Back and Put The handcuffs on me immediately. Officer O'Donnell Search me, Then The Officer Physically Removed my Property From my Rear Left Pocket and Took my wallet He Removed my $59.00, $40.00 Lottery Tickets, and Drivers License.

On The witness stand Officer Corey Walker supported Defendand Curtis Smith statement That Curtis Smith stop The Chevy Cargo work Van in Front of ~~Hollywood~~ BlockBuster Viedo Store, In which is located at approximately 7931 South Ashland, Therefore, This is Approximately Three hundred Feets away. From 7951 South Ashland where Officer O'Donnell Lied, and Stated a Drug Deal was going on with Curtis Smith and Denise Evans.

(13.) Now on The 7th Day of April, 2008 A.D when officer O'Donnell was on the witness stand He stated "Officer Corey Walker and his informent called Curt Two Times at The gas station on 8100 south Ashland about 8:30 P.m. and 8:40 P.m. Wherefore, as a matter of FACT when I submitted my complaint under the CIVIL RIGHTS ACT, TITLE 42 Section 1983 U.S. Code (states County, or municipal defendants) Case Name Curtis Smith -v- James Tomaska et al. Case Number 07C5794 CASE FILED on or about October 12, 2007. On page IV. STATEMENT OF Claim. I Defendant Curtis Smith, Stated. "I just counted my $59.00 At the gas station. I bought $11.00 gas and $10.00 I Played on my Lottery at the corner gas station at 8100 south Ashland." Defendant Curtis Smith was that same gas station and at approximately 8:30 P.m. and about 8:50 P.m. . Officer O'Donnell Lied on the witness stand Because I I did not see no officer Corey Walker on Phone or An Alleged Informent. Wherefore IF officer O'Donnell was Telling the Truth, officer Walker and Defendant Curtis Smith Would have meet right there at the same Time. Therefore, it would not have Been a Reason to meet at 80th south Ashland, To make a Narcotics sales There.

After approximately 30 minutes Judge Hibbler Recalled the Jurors out of deliberation., Because The Jurors was deliberateing about how much Time To sentence Defendant For The 1995 sex abuse case. Then One of the Jurors The Leader with a show of Authority was Leading the Entire Jurors, useing Coercion on The other Jurors to Sentence Defendant Curtis Smith to LIFE Because of the sex offense That happen in 1995. This should be in The Court Recorder Transcripst of Testimony. Defendant Curtis Smith did not Receive A Fair unbais Jury Trial.

Defendant Curtis Smith Asked his Attorney Michael Finn To File A motion To Discharge Jury Panel, Because all The Jurors was deliberating on The 1995 case, Instead of diliberating on officer O'Donnell and officer Walker Conflicting statement of what happen on January 30, 2005. Defendant Curtis Smith Attorney Refused To File motion to Discharge Jury Panel. 725 ILCS 5/114-3

① The Judge William Hibbler Abused his discretion
② Defendant Attorney Michael Finn is guilty of Ineffective Assistance of Counsel.

(14) NO

(15) (A) Michael Finn - 53 W Jackson Blvd Ste 525 Chicago, IL 60604
(B) Michael Finn - 53 W. Jackson Blvd Ste 525 Chicago, IL 60604
(C) Michael Finn - 53 W Jackson Blvd Ste 525 Chicago, IL 60604

(16) Yes

(17) NO  (18) ① The date on which the judgment of conviction Became Final; April 11, 2008.

Therefore, movant asks That The Court grant The Following relief: Please Dismiss Charge, Grant unto me a Judgment of Acquittal, Please grant my motion under 28 U.S.C §2255 Or any other Relief To which movant may be entitled.

I declare state under penalty of Perjury That The Foregoing is True and correct and That This Motion Under 28 U.S.C § 2255 was place in the Prison mailing system on April 16, 2008. A.D

Executed (Curtis Smith) on

April 16, 2008 (Date)   (6 of 6)

Signature: Curtis Smith
PROSE, REFER

Signature of movant: Curtis Smith

## AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS THE CHARGES

WHEREFORE, the Prosecution has commenced maliciously without probable cause.

1. In re: (The Witness duly sworn.) Mr. Tomaska: The people of the State of Illinois vs. Curtis Smith, Denise Evans – GJ #FEB. 2199 – ARR. Date 03-15-05. Case #05 CR 5199. Before the Special Grand Jury of Cook County February 2005. Transcript of testimony taken in the above entitled matter on the 22nd day of February A.D. 2005. Present: Mr. James Tomaska, Assistant States Attorney. Listed Witness: The City of Chicago Sixth District Police Officer Michael O'Donnell.

2. Wherefore, knowingly, the Cryer of Facts – the Witness duly sworn, Mr. Tomaska, knew what his listed witness, Officer O'Donnell had stated in his City of Chicago Police Arrest Report Number HL-153314. Thus Mr. Tomaska still proceeded forward maliciously. Deceitfully he misled, misinformed, thus, he tainted and corrupted the facts before the Special Grand Jury #2199. To receive a true Bill of Indictment against the Defendants Curtis Smith and Denise Evans.

3. Mr. Tomaska did not inform the Special Grand Jury #2199 about the very important deemable exculpatory evidential fact that there were two more people in the front seat on the passenger side of the Defendant Curtis Smith – 2500 Series – Chevy – cargo work van with his roofing ladders on top.

4. The two listed Passengers – female (Felicia Jackson), sitting no the male's lap (Steve Sanford), front seat passengers. Officer Michael O'Donnell stated this fact in his City of

1

Chicago Police Arrest Report #HL-153314. This very important deemable exculpatory evidence fact could have exonerated the Defendant Curtis Smith of all the charges against him before the Special Grand Jury #2199.

5. Number one fact: Felicia Jackson – sitting on the male's, Steve Sanford's, lap in the passenger side seat. Their two bodies were blocking the complete view of the passenger side door mirror and window where Officer O'Donnell allegedly stated that Denise Evans approached that van, and stopped at the passenger side door and engaged in a conversation with the Defendant Curtis Smith who was seated in the driver's seat, which is approximately four feet away from the passenger side door where the alleged narcotics sale had taken place with Vivian Jones – AKA Denise Evans.

6. Number two fact: The 2500 series Chevy Cargo work van heating system stopped working properly. Therefore, it kept the window steamed up. Defendant Curtis Smith had used a lot of balled up or wrapped up white Home Depot clean up towels to keep wiping the steam off the windows. Thus, there was a lot of used wrapped up, balled up white towels lying around the front seat partition off from the rear section of the van. The passenger side door window cannot be let down because the door window handle *is broken OFF* and the passenger side door lock were frozen in the locked position that night. The door could not be opened.

7. Mr. O'Donnell stated that he had seen Defendant Evans tendering the Defendant Smith an unknown amount of United States currency, and in return, the Defendant tendered a small item to the Defendant Evans. Officer O'Donnell lied before the Grand Jury #2199 because it is impossible for a person, Officer O'Donnell, to look inside a steamed up window, then look through the steel and metal body of the full-size taller – 2500 series Chevy cargo work van because Officer O'Donnell was parked approximately 150 to 250 feet away, parked on a 45 degree angle sitting in a much smaller, low to the ground vehicle.

8. A narcotics sale did not take place, nor an intent to deliver a controlled substance did not take place at the passenger side door at 7951 South Ashland with the alleged buyer Defendant Evans. Vivian Jones, AKA Denise Evans, was Defendant Curtis Smith's third passenger who was exiting the van from the rear middle door section of the van at approximately 79312 South Ashland in front of Hollywood Video Store. Their surveillance video camera can attest to this fact.

9. After wiping the steam off the front windshield and driver side door windows, now Defendant Curtis Smith began to pull out of the parking lane halfway into the right north bound driving lane. Suddenly a south bound parked vehicle that was parked 150 to 250 feet away came out of its parking space and made a quick u-turn into the north bound lane in front of the Defendant Curtis Smith's van. The undercover police vehicle suddenly turned south bound, heading head-on toward the Defendant Curtis Smith's vehicle. Defendant Smith stopped and put the van in park. The undercover vehicle turned in a 45 degree angle and blocked the path of the Defendant Curtis Smith's 2500 Chevy cargo work van, stopped and parked.

2

10. Defendant Vivian Jones, AKA Denise Evans, was about approximately 10 to 20 feet in front of the van when the unknown car turned into the northbound lane and blocked Curtis Smith's path. Defendant Denise Evans turned and ran fast southbound before Officer Walker had stopped his vehicle on 45 degree angle, parked and took his seat belt off, jumped out the driver's side door onto the snow, and began to chase Evans. Officer Walker captured Defendant Evans and returned to his undercover police vehicle approximately 15 to 20 minutes later.

11. Now Officer O'Donnell, who was still inside the undercover vehicle turned on the flashing blue light and put it in the front windshield. He took off his seat belt and exited the vehicle. O'Donnell was blinded by the high beam headlights before and after he had exited his undercover police vehicle.

12. Now Officer O'Donnell was standing at a 45 degree angle by the passenger side door. O'Donnell displayed his weapon. He was pointing it toward the driver's side of the Defendant Curtis Smith's Chevy van. O'Donnell shouted out the order, "Driver turn off the engine! Everybody put your hands on the dashboard so I can see them. Don't nobody move!"

13. Then Officer O'Donnell ran quickly in a 45 degree angle from the passenger side of his vehicle, running across the front of the Chevy van, headed toward the driver's side door. O'Donnell opened the door with his weapon pointed at Defendant Curtis Smith's head.

14. Officer O'Donnell reached inside the van and grabbed Curtis Smith's coat and shirt collar from the back of his neck. Immediately O'Donnell violently pulled Curtis Smith out of the van, and immediately placed the handcuffs on Defendant Curtis Smith and arrest the Defendant at that specific point in time without probable cause.

15. As a matter of Fact, there was not a narcotics sale at 7951 South Ashland to Defendant Evans. There was not a narcotics sale on the passenger side of the Defendant Curtis Smith's 2500 series Chevy cargo work van with his roofing ladders on top.

16. Officer O'Donnell did not read the Miranda warning at the time he arrested Defendant Curtis Smith. O'Donnell did not at any time while Curtis Smith was in his custody read the Miranda Warning.

17. Defendant Curtis Smith stated: "Officer O'Donnell frisked my entire body and searched inside my pants, shirt, and coat pockets. I was clean. Officer O'Donnell did not find any narcotics, no weapon, no cocaine on my body. Officer O'Donnell did not find any narcotics or weapons on or about or in the immediate reach of me, Curtis Smith. I was clean. O'Donnell did not see any narcotics or weapons in plain sight."

18. Defendant Curtis Smith stated: "Officer O'Donnell took my wallet out of my left rear pant pocket. O'Donnell asked, 'How much money is in here Curt?' I said $559.00. I just counted it at the gas station. I bought $11.00 gas and $10.00 I played on my lottery at the corner gas station at 8100 South Ashland. I said 'Officer I worked hard for my money. You can't take my money for no reason.' I said 'Officer I am self-employed. I

3

am the owner of CIS Roofing Construction, Home Remodeling service. We just got off work. I got Chicago business license, too!"

19. Officer O'Donnell stated. "I'll give you a receipt for the money."

20. Defendant Curtis Smith stated, "No. I need my money. I got a two-year-old baby at home. She needs milk, Pampers; my rent is due on the first! Please give me my money back!! I work for a living! Why are you arresting me? For what probable cause do you have to arrest me, Officer? I have not done nothing wrong!"

21. Officer O'Donnell stated. "When I seen Vivian, a known prostitute get out of the van, and you wiping steam off the window, and she, Felicia Jackson, sitting on his, Steve Sanford's lap, when I ran your license plate, Curtis you are a sex-offender! Now Curtis you know I had to come check you out. Curtis, you know you broke the law when you had sex with prostitutes on the street in this van, and you are a sex offender."

22. Defendant Curtis Smith stated. "Vivian Jones is my neighbor. She stay at 1712 West 79th Street. We stay less than a half block away from each other. The heat stopped working. That's why we was wiping the steam coming from our breath off the window. Officer, there is no probable cause for you to have placed me in these handcuffs, and placed me under arrest. I just stopped here to let Vivian out of my van! I have not done nothing wrong! Please let me go home to my family. Please sir!"

23. Officer O'Donnell stated, "Shut up. I'm tired of hearing your mouth! If I search this van I am going to find drugs or guns!"

24. Defendant Curtis Smith stated, "Officer, I did not give you permission to search my van. I have not broken no laws. I have not violated no traffic rules or regulation. No, Officer, you all do not have my consent to search my work van! No!"

25. Officer O'Donnell stated, "Shut up!" Then he pulled, lifted up forcibly on the handcuffs and pushed, guided Defendant Curtis Smith to the front of the van to stand. "Stay here. Don't try to run cause I will shoot your ass!!"

26. Then Officer O'Donnell went back to the driver's side door. He ordered Felicia Jackson off Steve's lap and out of the van. He took her purse, opened and searched through it. He did not find anything. Officer O'Donnell ordered Steve Sanford out on driver's side door. He said, "Put your hands up on the side of the van." O'Donnell frisked Steve's entire body. Officer O'Donnell began searching the inside of Steve's pants, shirt, and coat pockets. Officer O'Donnell allegedly found two bags of narcotics on Steve.

27. Officer O'Donnell closed the driver's side door. Then he walked Felicia and Steve to the front of the van where Curtis Smith was standing.

28. O'Donnell Stated, "I'm locking you two up in jail for possession of heroin. But if yous give me something on Curtis, I will let yous go. Did Curtis have sex with Vivian in the van?" Felicia and Steve said no. "Well I'm going to let Curtis go home. You two did not give nothing on Curtis. I'm taking yous to jail."

4

29. Steve started crying. Steve stated, "Officer, I don't have a bad criminal background. I never been to prison. I just been to jail three times. Please Officer I don't want to go to prison. Officer, let me talk with you in private for a minute."

30. Officer O'Donnell stated, "Yes! Yous stay in front of the van" Then Officer O'Donnell grabbed, lifted up forcibly on the handcuffs and pushed guided Defendant Curtis Smith to the driver's side back seat door of the police vehicle.

31. Now the Defendant Curtis Smith stated that he started to cry, and he asked Officer O'Donnell, "Why are you doing this to me? I just got off work. I have not done nothing wrong. I have not murdered, robbed, raped or hurt nobody! Please let me go home to my family!"

32. Officer O'Donnell stated, "Shut up! I don't like you Dick!! Get your ass in the car!! Then O'Donnell slammed the door in Defendant Curtis Smith's face and walked away toward Steve and Felicia.

33. Now come Officer Walker about 15 to 20 minutes later. He Has captured Vivian Jones, AKA Denise Evans, a known prostitute. Officer Walked placed Defendant Evans in the police vehicle on the passenger side door, on the back seat with the Defendant Curtis Smith. Then Officer Walker went to the driver's side door of the van and opened the door, got inside and started searching the front seats, partition off from the rear section of the van.

34. Defendant Curtis Smith stated, "I began shouting out at Officer Walker, "I did not give you police officer my consent to search my cargo work van!"

35. Then Officer Walker began to throw all of Defendant Curtis Smith's business papers, receipt book, work order forms, a copy of CLS Roofing Business license, and some small tools. Officer Walker tossed all these items out onto the snow in the street from the front seat partition from the rear section of the Defendant Curtis Smith's 2500 series Chevy cargo work van.

36. Officer Walker did not find any wrapped up white towels containing the alleged narcotics and alleged two shot rusted trigger pistol inside the front seat section of the van.

37. Defendant Cutis Smith stated, "I was robbed by Officer O'Donnell."

38. Now the two City of Chicago Sixth District Police Officers, Michael O'Donnell and Officer Walker conspired to and then arrested Defendant Curtis Smith without probable cause.

39. Officer O'Donnell called out for Officer Walker to get out of the van, and come over here to listen to Steve.

40. Now it was Steve Sanford who informed Officer O'Donnell to the fact that it was he, Steve Sanford, who had found the old rusted out trigger two-shot pistol in a place in the

5

wall when he was working today tearing out the old rotted out wooden dining room china cabinet. The china cabinet was built into the dining room wall.

41. Officer O'Donnell, Felicia, Officer Walker followed Steve to the rear middle door section of the van. Then Officer Walker entered the van. Steve directed Walker to the back rear van doors. Walker opened the back rear two van doors. Then Steve Sanford directed Officer Walker to where his—Steve Sanford's—tools work bag was located at the rear back partition off from the front section of the Defendant Curtis Smith's 250 series Chevy cargo work van. Now officer Walker found Steve Sanford's tool work bag and opened it, and removed the alleged wrapped up white towel containing the alleged narcotics, and the rusted out two-shot pistol.

42. Now, as a matter of fact, it was Steve Sanford who informed Officer O'Donnell and Officer where to find his, Steve Sanford's, sixteen five dollar bags of alleged heroin, one five dollar bag of cocaine, and the alleged two-shot pistol. Steve stated to O'Donnell he is a good laborer land finish plaster, but he basically works to feed his sixty dollar a day heroin habit, and his love for prostitutes habit.

43. Then Officer O'Donnell rewarded Steve and Felicia. O'Donnell gave them ten dollars each out of the Defendant Curtis Smith's wallet. Then Officer O'Donnell gave Steve and Felicia one five dollar bag each of Steve Sanford's own narcotics. Then Officer O'Donnell ordered them to leave.

44. Two blue and white police vehicles arrived shortly after Steve and Felicia had left the scene. The City of Chicago Sixth District police radio dispatch can attest to the fact of the arrest location. Why did Officer O'Donnell change the arrest location?

45. Defendant Curtis Smith's Attorney, Michael Finn, moves this court to enter an Order to Subpoena Chicago Sixth District police radio dispatch recording to attest to the fact of the arrest location, and to subpoena the Defendant Curtis Smith's 2500 series Chevy cargo work van to attest the facts about the passenger side door window handle broken off, and the fact that the heating system in the van is not working properly to stop the windows from steaming up.

46. The gas station located at 8100 S. South Ashland surveillance video camera can attest to the fact that Denise Evans entered the van through the passenger side rear middle doors.

47. Wherefore, I am not the smartest person on the earth, but if there had been an alleged narcotics sale at the passenger side door of the van, it would have been with the two people in the one passenger side seat.

48. Moreover, Mr. James Tomaska and Officer O'Donnell conspiracy to receive a True Bill of Indictment against the Defendant Curtis Smith, MR. Tomaska and Mr. O'Donnell created tainted and corrupt evidence.

49. Thus, Mr. Tomaska and Mr. O'Donnell have clearly deprived Curtis Smith of the fairness of the due process of the law.

6

(B) Factors To Consider. For the professional officer, an important point to note is that an individual fact or observation alone may be as consistent with innocuous, perfectly lawful conduct, and activities as it is with criminal enterprise. Courts consistently look at the combination of several different observations, each of which when isolated may appear innocent but when taken together would lead to a reasonable impression that illegal activities are taking place.

Investigatory stops are routinely conducted in a variety of factual setting. The process of detaining and questioning a person is not limited to an "on-the-street" scenario, where an officer detains and question a pedestrian. Investigatory stop are permissible in situations involving vehicles and motorists as well. An officer may briefly detain and question the driver or passengers of a vehicle if he or she has a reasonable suspicion that the occupants are involved in criminal activity. Following a lawful stop an officer as a matter of course may order the driver and any passengers to step out of the vehicle, even without any particularized suspicion that the vehicle occupants are armed or may otherwise pose a threat to the officer

(C) Investigatory Stops. The Police may briefly detain and question a person upon a reasonable suspicion, short of probable cause for arrest, that the person is involved in criminal activity. What is or is not reasonable suspicion depend on balancing, weighing and meshing a variety of factors, taking into account the particular factual setting with which an officer is confronted.
Some factors commonly cited by courts when determining the existence or absence of reasonable suspicion are as follows:

(1) A prior criminal record does not create a reasonable suspicion that there is current criminal activity. However, if that knowledge is coupled with other concrete facts or observations, an officer may rely on the combination to create a reasonable suspicion of present criminal activity.

(2) An officer's awareness that a crime was recently committed in the vicinity is a pertinent consideration. Standing alone however, this knowledge does not create a reasonable suspicion that an individual who happens to be in that area a short time later was the perpetrator.

(3) A suspect's presence in a high-crime area, or an area known for drug trafficking, standing alone, is not a basis for reasonable suspicion. But a supects presence in such an area is an articulable fact. Coupled with other more solid observations such presence can create reasonable suspicion that the suspect is engaged in the unlawful activity for which the neighborhood is known.

(4) Evasive conduct, furtive gestures, concealing, or attempting to conceal ones identity are criteria an officer may weigh in assessing if his suspicion is reasonable. However, each individual observation, without more, will not create a reasonable suspicion of criminal endeavor.

(5) The time of day or night in which the individual is observed is relevant. However, merely being out in public at a late hour, without more, will not justify a stop.

50. Now in the light, Mr. Tomaska clearly has maliciously prosecuted Curtis Smith without probable cause before the Special Grand Jury #2199.

51. Now come the Assistant United States Attorney: The United States of America vs. Curtis Smith, case Number 06 CR 0441. Wherefore, knowingly when U.S. Attorney took over, and acquired MR. James Tomaska: The People of the State of Illinois vs. Curtis Smith, case Number 05 CR 5199 before the Special Grand Jury #2199 of Cook County, 2005, transcript of testimony in the above entitled matter on the 22nd day of February. Now U.S. Attorney is using Mr. Tomaska's old tainted and corrupt evidence as her new evidence. In which U.S. Attorney is still commencing malicious prosecution without probable cause.

52. Because knowingly in the light of the Assistant United States Attorney U.S. Attorney had to have read and reviewed the tainted and corrupt evidence created by Mr. Tomaska and Mr. O'Donnell, which is clearly seen in Special Grand Jury #2199, transcript of testimony, and the City of Chicago Police Arrest Report #HL-153314.

53. This tainted and corrupt evidence created by Mr. Tomaska, Mr. O'Donnell and U.S. Attorney could conceivably make all their evidence to date inadmissible.

54. Wherefore, based upon the above facts, Defendant Curtis Smith prays that the Honorable Court enter a Judgment against the United States Government Department of Justice. Assistant United States Attorney: The United States of America vs. Curtis Smith, Case #06 CR 0441, an order to exclude all the alleged evidence found by law enforcement officer during their improper search and seizure of the Defendant Curtis Smith's person and his property.

Because the law enforcement officers' violation of the Fourth, Fifth and Fourteenth Amendments Rights to the Federal Constitution and their malicious prosecution without probable cause against the Defendant Curtis Smith.

WHEREFORE, Defendant Curtis Smith prays that the Court enter Judgment against the United States of America to discharge and to dismiss the charges against the Defendant Curtis Smith.

Jerome Combs
3050 Justice Way
Kankakee, IL 60901

Respectfully submitted, 228499

By: _Curtis Smith_  CURTIS SMITH